UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BERNADETTE BUJOL-BROWN** | * | CIVIL ACTION NO. |
| | * | |
| **VERSUS** | * | |
| | * | |
| **DAIICHI SANKYO, INC.**, dba Sankyo USA Development, Sankyo Pharma Development, Sankyo Pharma Inc., Daiichi Sankyo Pharma Development, Daiichi Pharmaceuticals, Inc., Daiichi Medical Research, Inc., and Daiichi Pharma Holdings, Inc.; **DAIICHI SANKYO US HOLDING, INC.**, parent company of Daiichi Sankyo, Inc.; **DAIICHI SANKYO., LTD.**, parent Corporation of Daiichi Sankyo US Holdings, Inc., and/or Daicchi Sankyo Inc., fka Sankyo Company, Ltd.; and **Forest Laboratories, Inc.** | * * * * * * * * * * | * |

*******************************************

_____

## COMPLAINT

**THE COMPLAINT** of Plaintiff, Bernadette Bujol-Brown, a person of the full age of majority and domiciled in the Parish of St. Charles, who with respect represent as follows:

### INTRODUCTION

Plaintiff, Bernadette Bujol-Brown, brings this action for personal injuries suffered by Plaintiff as a proximate result of being prescribed Benicar®, a defective and unreasonably dangerous pharmaceutical blood pressure drug, which is and was at all times relevant to the this action, manufactured, designed, research, tested, packaged, labeled, marketed, advertised, distributed, prescribed and sold by Defendants identified herein.  Plaintiff alleges as follows:

### PARTIES

**Plaintiff**

1. Plaintiff is an individual who is a major resident and citizen of the City of St. Rose, St. Charles Parish, Louisiana.

1

**Daiichi Sankyo Defendants**

2. On information and belief, Defendant Daiichi Sankyo, Inc. (Daiichi Sankyo U.S.) is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal place of business located at Two Hilton Court, Parsippany, New Jersey 07054.

3. On information and belief, Defendant Daiichi Sankyo U.S. is or was also known as Sankyo USA Development, Sankyo Pharma Development, Sankyo Pharma, Inc., Daiichi Sankyo Pharma Development, Daiichi Pharmaceuticals, Inc., Daiichi Medical Research, Inc., and Daiichi Pharma Holdings, Inc.

4. On information and belief, Daiichi Sankyo U.S. is in the business of designing, marketing, researching, distributing, packaging, marketing, promoting and selling pharmaceutical drugs across the United States, including within the State of New Jersey.

5. On information and belief, Daiichi Sankyo U.S. has a development and regulatory group named Daiichi Sankyo Pharma Development with offices in Edison, New Jersey, and a research institute named Daiichi Sankyo Research Institute with offices in Edison, New Jersey.

6. On information and belief, Daiichi Sankyo U.S. Holdings, Inc. is a Delaware corporation and has a principal place of business at Two Hilton Court, Parsippany, New Jersey 07054.

7. On information and belief, Daiichi Sankyo U.S. is a wholly owned subsidiary of Daiichi Sankyo U.S. Holdings, Inc.

8. On information and belief, Daiichi Sankyo U.S. Holdings, Inc. operates as a holding company for Daiichi Sankyo Co., Ltd.

9. On information and belief, Defendant Daiichi Sankyo Co., Ltd. (Daiichi Sankyo Japan) is and was at all relevant times a corporation organized and existing under the laws of Japan, having a place of business at 3-5-1, Nihonbashi-honcho, Chuo-ku, Tokyo 103-8426, Japan.

10. On information and belief, Daiichi Sankyo Japan is in the business of designing and manufacturing prescription drugs across the world, including in the United States and specifically within the states of New Jersey, Delaware, and New York.

11. On information and belief, Daiichi Sankyo Japan was formed by a merger between Daiichi Pharmaceutical Company, Ltd., and Sankyo Company, Ltd.

12. On information and belief, Daiichi Sankyo Japan is or was the parent company of Daiichi Sankyo U.S. and/or Daiichi Sankyo U.S. Holding, Inc., and therefore liable for any and all tort liabilities of Defendants Daiichi Sankyo U.S. and/or Daiichi Sankyo U.S. Holdings, Inc.

13. On information and belief, Daiichi Sankyo, U.S. operates as the U.S. headquarters of Daiichi Sankyo Japan.  At least four of the principals, members, directors, or officers of Daiichi Sankyo U.S. are also members of Daiichi Sankyo Japan.  In addition, Daiichi Sankyo Japan operates several research and development facilities around the world, including collaborating with the Daiichi Sankyo U.S. to oversee global clinical trials from its headquarters in Edison, New Jersey.

14. There existed, at all times relevant to this action, a unity of interest in ownership between Daiichi Sankyo Japan and Daiichi Sankyo U.S., such that any independence from, and/or separation between and among the Defendants has ceased and/or never existed; in that

    these two Defendants, and each of them are the alter egos of one another and exerted direct control over each other.

15. For ease and convenience, Daiichi Sankyo Japan, Daiichi Sankyo U.S., and Daiichi Sankyo U.S. Holdings, Inc., are hereinafter collectively referred to as "Daiichi Sankyo."

16. On information and belief, Daiichi Sankyo designs and manufactures numerous pharmaceutical drugs for sale and use through the United States.

17. On information and belief, Daiichi Sankyo designed, manufactured, packaged, labeled, distributed, sold, marketed, advertised, and/or promoted the blood pressure drugs containing olmesartan meoxomil, which is marketed in the United States as Benicar®, Benicar HCT®, Azor®, and Tribenzor®.  Daiichi Sankyo refers to these drugs collectively as the "Benicar Family."

**Forest Laboratories, Inc. Defendants**

18. On information and belief, Forest Laboratories, Inc. is a corporation organized and existing under the laws of the State of New York with its headquarters and principal place of business located at 909 Third Avenue, New York, New York 10022.

19. On information and belief, between 2002 and March 31, 2008, Defendants, Forest Laboratories, Inc., actively promoted Benicar® and Benicar HCT®.

20. On information and belief, Defendants, Forest Laboratories, Inc., continuously received income from Benicar® and Benicar HCT® profits beginning in 2002 and ending March 31, 2014.

**All Defendants**

21. The term "Defendants" is used hereafter to refer to all above named entities.

22. Defendants are corporations organized under the laws of various U.S. States or the Dominion of Japan that were or are doing business within the several United States. The aforementioned Defendants designed, marketed, sold, distributed, packaged, promoted, labeled, researched, tested or manufactured the olmesartan product(s) which caused Plaintiff's injuries.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000.00 exclusive of interest and costs. There is complete diversity of citizenship between the Plaintiff and Defendant. Plaintiff is a resident of St. Charles Parish, Louisiana and Defendant has its principal places of business in the state of New Jersey.

24. Venue is proper in this District pursuant to 28 U.D.C § 1391(a), as Plaintiff was prescribed Benicar HCT® to treat high blood pressure, as developed, designed, packaged, advertised and sold by Defendants, and suffered the injuries that form the basis for this lawsuit in the Eastern District of Louisiana. Defendant does substantial business in the State of Louisiana and within this Federal District, and at all times relevant hereto, Defendant developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce the aforementioned olmesartan drug, specifically, Benicar HCT®.

## GENERAL FACTUAL BACKGROUND

25. Defendant is the holder of the approved New Drug Application ("NDA") for Benicar®, Benicar HCT®, Azor®, and Tribenzor® (hereinafter "Benicar Family").

26. Defendant is in the business of designing, manufacturing, and marketing prescription drugs, including the high blood pressure treatment, Benicar HCT®.

27. Defendant does business in Louisiana through the sale of Benicar Family drugs and other prescription drugs in the state.

28. At all times alleged herein, Defendant includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

29. At all times relevant, Defendant was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either directly or indirectly through third parties, subsidiaries or related entities, the high blood pressure drug, Benicar HCT®.

30. Benicar HCT® is a prescription drug tablet aimed at treating or managing high blood pressure with the active ingredient, olmesartan medoxomil.

31. The federal Food and Drug Administration (FDA) approved Defendant' New Drug Application for Benicar® in April 25, 2002 for treatment of hypertension.[1]

32. On information and belief, the FDA approved NDA No. 21-532 for Benicar HCT® tablets (40/12.5 mg, 40/25 mg, and 20/12.5 mg), which tablets contain the active ingredients olmesartan medoxomil and hydrochlorothiazide. Benicar HCT® tablets were approved by the FDA on June 5, 2003, for the treatment of hypertension.

---

[1] NDA No. 21-286, Benicar® Tablets, 5 mg, 20 mg, and 40 mg, approved by the United States Food and Drug Administration (FDA), April 25, 2002.

33. As required by law for all prescription drug products, each of the Defendants include the product's labeling, of package inserts, as approved by the FDA. Such labeling includes information on the product's active and inactive ingredients, clinical pharmacology, indications and usage, contraindications, warnings, precautions and side effects.

34. The indicated usage for olmesartan products described in the product labeling includes treatment for hypertension, alone or with other antihypertensive agents, to lower blood pressure.

35. The text of the indicated usage or uses for olmesartan products, including Benicar HCT®, did not disclose any risks associated with long-term use of the drug.

36. In connection with Benicar HCT® and all other olmesartan products, Plaintiffs allege the following:

## CASE-SPECIFIC ALLEGATIONS

37. Plaintiff, Bernadette Bujol-Brown, is 63 years old.

38. Plaintiff was first prescribed Benicar HCT® on May 1, 2006.

39. Plaintiff took Benicar HCT® according to doctor's orders and as described in the product insert responsibly and appropriately beginning approximately May 1, 2006 and ending approximately August 9, 2013.

40. By spring 2010, Plaintiff was experiencing various gastrointestinal conditions, including but not limited to, abdominal pain, nausea, vomiting, and diarrhea, which led her to see her primary care physician.

41. As a result of Plaintiff's conditions, she was referred to Ochsner Medical Center in St. Rose, Louisiana for surgery.

42. On April 9, 2010, Plaintiff underwent an upper GI endoscopy that revealed numerous lesions and gastric antral vascular ectasia, or 'active bleeding.'

43. On April 23, 2010, Plaintiff had her second upper GI endoscopy to treat her intestinal complaints.

44. On November 20, 2013, Plaintiff returned once more to Ochsner Medical Center for a third upper GI endoscopy, which resulted in the removal of hematin existing throughout Plaintiff's stomach.

45. On or about July 3, 2013, the Food and Drug Administration issued a Drug Safety Communication warning that the Product can cause intestinal problems known as sprue-like enteropathy.  The FDA approved changes to the label of all olmesartan drugs, including Benicar HCT®, to include this concern.  Some of the findings of the FDA include but at not limited to:

    (a)   Symptoms of sprue-like enteropathy include severe, chronic diarrhea with substantial weight loss.

    (b)   The enteropathy may develop months to years after starting olmesartan medoxomil, and sometimes require hospitalization.

    (c)   If patients taking olmesartan develop these symptoms and no other cause is found, the drug should be discontinued, and therapy with another antihypertensive started.

    (d)   Discontinuation of olmesartan has resulted in clinical improvement of spruce-like enteropathy symptoms in all patients.

    (e)   Sprue-like enteropathy has not been detected with ARD drugs other than olmesartan.

46. On or about August 2, 2013, Plaintiff's treating physician mailed her correspondence related to the FDA's warning described in paragraph 46.  This was the first time Plaintiff received such Benicar-related warnings.

47. Plaintiff has since discontinued use of the Product, Benicar HCT®, on advice from her treating physician, and her symptoms have been resolved.

### FIRST CAUSE OF ACTION – LOUSIANA PRODUCTS LIABILITY ACT

48. Plaintiff incorporates by reference paragraphs 1 through 48 of this petition as is fully set forth herein and further alleges:

49. Defendant was and is engaged in the business of selling Benicar®, Benicar HCT®, and other drugs in the Benicar family in the State of Louisiana.

50. The Benicar HCT® manufactured, marketed, promoted and sold by Defendant was expected to, and did, reach Plaintiff, Bernadette Bujol Brown, without substantial change in the condition in which it was sold.

51. Defendant has introduced a product into the stream of commerce which is dangerous and unsafe in that the harm of Benicar HCT® and other Benicar family drugs outweigh any benefit derived therefrom. The unreasonably dangerous nature of Benicar HCT® caused serious harm to Plaintiff.

52. The Benicar HCT® tablet ("the drug") prescribed and ingested by Plaintiff, Bernadette Bujol Brown, was defective as defined by the Louisiana Products Liability Act (Louisiana Revised Statute 9:2800.51, *et seq*.) including, but not limited to, having defects in design, nonconforming to express warranty, and inadequate warnings and instructions regarding the use and reasonably foreseeable misuse of the product:

    a. The drug was defectively and dangerously designed;
    b. The drug's defective design resulted in risks which exceeded the benefits of the drug;

    c. The drug's defective design resulted in a device which was more dangerous than the ordinary consumer would expect;

    d. The drug failed to perform in a manner reasonably expected in light of its nature and intended function and subjected Plaintiff to an unreasonable risk of harm beyond that contemplated by an ordinary person;

    e. The warnings were insufficient because they did not advise of the problems outlined in Paragraph 45 above, which problems were known to Defendants or should have been known to Defendants prior to the manufacture, distribution, marketing, and/or selling of the drug.

    f. The drug did not include sufficient instructions or warnings of potential safety hazards, including but not limited warning regarding the connection between the use of the Product and symptoms of sprue-like enteropathy, such as severe, chronic diarrhea with substantial weight loss, and

53. Defendant manufactured, marketed, promoted and sold a product that was not merchantable and/or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injuries sustained by the Plaintiff.

54. As a direct and proximate result of the subject product's defective design, Plaintiff suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering. She has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue

into the future. The Plaintiff seeks actual and punitive damages from the Defendant as alleged herein.

55. Defendant placed the Product, Benicar® and Benicar HCT® into the stream of commerce with disregard for the public's safety.

56. Defendant knew and, in fact, advertised and promoted the use of Benicar® and Benicar HCT® despite their failure to test or otherwise determine the safety and efficacy of such use. As a direct and proximate result of the Defendant' widespread promotional activity, physicians began commonly prescribing this product as safe and effective.

57. Defendant failed to disclose and warn of the health hazards and risks associated with the Benicar® and Benciar HCT®, and failed to sufficiently test the olmesartan drugs.

58. The drug was not accompanied by adequate instructions and/or warnings to fully apprise the consumers, including Plaintiff, of the full nature and extent of the risk and side effects associated with their uses, thereby rendering the Defendants liable to the Plaintiff.

59. Defendant knew or should have known that physicians and other healthcare providers began commonly prescribing this product as a safe and effective contraceptive despite its lack of efficacy and potential for serious permanent side effects.

60. As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required and continues to require medical treatment, and incurred and continues to incur medical and hospital expenses.

61. Due to the above, the Benicar family drugs, including Benicar® and Benicar HCT® were defective as defined by the Louisiana Products Liability Act (Louisiana Revised Statute 9:2800.51, *et seq*.) including, but not limited to, having defects in design, nonconforming

to express warranty, and inadequate warnings and instructions regarding the use and reasonably foreseeable misuse of the product.

## DAMAGES

62. As a direct and proximate result of the ingestion and directed use of Benicar HCT®, Plaintiff has incurred, and will continue to incur, medical expenses and rehabilitation expenses.

63. As a direct and proximate result of the ingestion and directed use of Benicar HCT®, Plaintiff has incurred, and will continue to incur, a loss of earnings and/or loss of earning capacity.

64. As a direct and proximate result of the ingestion and directed use of the Benicar HCT®, Plaintiff has suffered, and will continue to suffer, physical pain, mental anguish, emotional distress, disfigurement, disability, and loss of enjoyment of life.

65. As a producing and proximate result of the above-described acts and omissions of Defendant, Plaintiff has incurred actual damages, including but not limited to:

   a. Reasonable and necessary medical expenses and rehabilitation expenses incurred in the past;

   b. Reasonable and necessary medical expenses to be incurred in the future;

   c. Conscious physical pain and suffering experienced in the past;

   d. Conscious physical pain and suffering to be experienced in the future;

   e. Mental anguish in the past;

   f. Mental anguish to be experienced in the future;

   g. Physical disfigurement in the past;

h.  Physical disfigurement to be experienced in the future;

i.  Physical impairment in the past;

j.  Physical impairment to be experienced in the future;

k.  Loss of earnings in the past;

l.  Loss of earnings/earning capacity to be experienced in the future;

m.  Pre and post-judgment interest at the lawful rate;

n.  Such other applicable damages as the Court deems appropriate.

**WHEREFORE**, Plaintiff prays that Defendants Daiichi Sankyo, Inc., Daiichi Sankyo, U.S., Daiichi Sankyo Holdings U.S., Inc., Daiichi Sankyo, Ltd., and Forest Laboratories, Inc. be duly cited and served with a copy of the Petition for Damages and that after due proceedings are had that there be judgment herein in their favor and against the Defendants Daiichi Sankyo, Inc., Daiichi Sankyo, U.S., Daiichi Sankyo Holdings U.S., Inc., Daiichi Sankyo, Ltd., and Forest Laboratories, Inc. in an amount sufficient to compensate Plaintiff for the damages sustained and all costs of these proceedings. Plaintiff hereby demands a trial by jury.

Respectfully submitted,

/s/ *Anthony D. Irpino*
_____
ANTHONY D. IRPINO (#24727)
PEARL A. ROBERTSON (#34060)
Irpino Law Firm
2216 Magazine St.
New Orleans, Louisiana 70130
Telephone: (504) 525-1500
Facsimile: (504) 525-1501
airpino@irpinolaw.com
probertson@irpinolaw.com
ATTORNEYS FOR PLAINTIFF